UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

CHARLES CABBLE,                               :

                           Plaintiff,          :          **MEMORANDUM**

               - against -                   :          <u>**DECISION AND ORDER**</u>

LINDA ROLLIESON, <u>et</u> <u>al.</u>,             :          04 Civ. 9413 (LTS)(FM)

                      Defendants.         :

----------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.    <u>Introduction</u>

           Plaintiff Charles Cabble ("Cabble") spent seven months in pretrial detention in 2003 before he was acquitted of charges arising out of a series of sex crimes that he was alleged to have committed. In this action instituted following his acquittal, Cabble asserts various claims against the City of New York and six individual defendants, including civil rights claims under 42 U.S.C. §§ 1983, 1985 and 1986, and claims of false arrest, false imprisonment, malicious prosecution, negligence, defamation, and intentional infliction of emotional distress.

           The case comes before the Court even before an answer has been filed in connection with three motions: (a) Cabble's motion to disqualify the law firm of Storch, Amini & Munves, P.C. (the "Storch firm") from further representation of the individual defendants; (b) the cross-motion of the City of New York ("City") and the individual defendants (collectively, the "defendants") to compel Cabble to provide them with

releases for the production of his criminal records under Section 160.50 of the New York Criminal Procedure Law ("CPL") ("Section 160.50 Releases"); and (c) the individual defendants' cross-motion to strike allegedly scandalous material in the first amended complaint ("Complaint").  For the reasons set forth below, the motion to disqualify the Storch firm is denied, as is the individual defendants' motion to strike, and the defendants' motion to compel is granted.

II.     Factual Background

        In January 2003, defendant Linda Rollieson ("Rollieson"), then an employee of a Hollywood Video store located at 2098 Bartow Avenue in the Bronx ("Store"), contacted Rebecca Dell'Aglio ("Dell'Aglio"), director of the Women's Rights at Work Project of Citizen Action New York, to report alleged sexual harassment by Cabble, who was then the Store manager.  (Affirm. of Douglas H. Wigdor, Esq., dated Mar. 4, 2005 ("Wigdor Affirm."), Ex. 2 at 313-14).  Several months later, in March 2003, Dell'Aglio suggested that Rollieson contact the Storch firm regarding these allegations. (Id. at 320).

        Coincidentally, on March 15, 2003, Cabble himself called the police to report that he had been assaulted by the father of the child of a Store employee named Nyree Soto ("Soto").  (Id. Ex. 7 at 651-54).  Although the alleged assailant had left the Store by the time the police arrived, both Cabble and Soto were questioned about the incident.  (Id. at 653-55).  Near the end of her interview, Soto volunteered to the police

that she had been raped by Cabble several weeks earlier.[1]  (Id. at 654).  At their request,

Cabble then accompanied the police from the Store to the precinct, where he was placed

under arrest.  (Id. at 656-57, 660).  He evidently was released on bail soon thereafter.

(See Pl.'s Mem. in Supp. at 6).

Subsequently, between March 21 and April 21, 2003, several members of

the Storch firm met with Rollieson, Soto, and the four other individual defendants,

Tamesha Dasent ("Dasent"), Christina Collazo ("Collazo"), Monique Riddock

("Riddock") and Lauren Thorpe ("Thorpe"), each of whom was then a Store employee.

(Id. at 6; Wigdor Affirm. Exs 2 at 320, 3 at 345-48, 4 at 744-46).  These meetings took

place at several locations, including Rollieson's apartment.[2]  (Wigdor Affirm. Exs. 3 at

345-48, 4 at 744-46).

On April 1, 2003, Rollieson accompanied Dasent to a police precinct to

report that Cabble had attempted to rape Dasent on December 25, 2002.   (Id. Ex. 8 at

109-10).  Upon learning of this allegation, the police interviewed both Rollieson and

Dasent. (Id. at 113).  That same day, the police re-arrested Cabble on additional charges.

(Id. Ex. 15 at ¶ 21). This time, rather than being released quickly, Cabble remained in

custody until he was released on his own recognizance on November 10, 2003.  (Id.).

---

1       Cabble contends, without citing any factual support, that he and Soto were involved in a
"consensual relationship" at the time of the assault.  (See Pl.'s Mem. in Supp. at 5).

2       While it is unclear who initiated the contacts that led to these meetings, the Storch firm
apparently reached out in the first instance to at least one of the individual defendants.  (Wigdor
Affirm. Ex. 5 at 485-86).

On April 17, 2003, the individual defendants filed a lawsuit in state court against the Hollywood Entertainment Corporation, which is the operator of the Store. (Id. Ex. 16). In that lawsuit, in which they were represented by the Storch firm, the individual defendants sought damages in the amount of $20 million (later raised to $50 million) as a result of Cabble's alleged harassment and abuse of them. (Id. & Ex. 4 at 743).

Four days later, on April 21, 2003, the Storch firm held a press conference at its offices which was attended by, among others, Rollieson, Steven Storch ("Storch"), a name partner at the Storch firm, Sangita A. Shah ("Shah"), an associate at the Storch firm, Gerry Migliore, a press liaison for the Storch firm, and Dell'Aglio. (See id. Exs. 2 at 320-321 & 16; Decl. of Sangita A. Shah, Esq., dated April 8, 2005 ("Shah Decl."), ¶ 6).

Shortly thereafter, the same individuals and defendant Dasent met with New York Times reporter Tina Kelley at the New York Times' offices. (Wigdor Affirm. Ex. 14 at 199). These discussions led to a published article, which Cabble contends is defamatory. (See Tina Kelley, Store Manager is Indicted in Sex Abuse of Employees, N.Y. Times, Apr. 26, 2003, at B4).

Prior to Cabble's criminal trial, Rollieson and Shah also attended several Citizens Action New York forums at which Rollieson spoke about the sexual abuse she allegedly had experienced. (Wigdor Affirm. Ex. 14 at 108-09). Between five and twenty people attended each such forum. (Id. at 108).

In April 2003, around the time of Cabble's second arrest, Rollieson also had several meetings with the Bronx District Attorney's Office. (Id. Ex. 8 at 104-09).

The criminal charges against Cabble led to a bench trial before Justice Steven Barrett in Supreme Court, Bronx County. (See Pl.'s Mem. in Supp. at 4). According to Cabble, ten of the fifteen counts originally charged were dismissed or withdrawn before the trial. (Id. n.4). On March 12, 2004, Justice Barrett acquitted Cabble on the remaining counts. (Id.).

Cabble commenced this action on December 1, 2004. (See Docket No. 1 at 1). He is represented by the firm of Thompson, Wigdor & Gilly ("TWG"), the firm that represents him in the state court civil suit brought by the individual defendants. (See Rollieson v. Hollywood Entm't, No. 0015764/2003 (Sup. Ct. Bronx County, filed April 17, 2003)). TWG also represented Cabble at the criminal trial. (Shah Decl. Exs. A-E).

Following the commencement of this suit, the New York City Law Department wrote to TWG on December 29, 2004, to acknowledge service of process. (See Decl. of Sheryl Bruzzese, Esq. ("Bruzzese Decl."), dated March 18, 2005, Exs. C, D). In its letters, the Law Department noted that as a consequence of Cabble's acquittal, the records relating to his arrests and prosecution had been sealed pursuant to CPL Section 160.50. (Id.). Although the Law Department furnished TWG with two Section 160.50 Releases (each captioned "Designation of Agent for Access to Sealed Records Pursuant to NYCPL 160.50[1][d]"), Cabble has not signed and returned them as requested in the letters. (Mem. in Supp. of City Mot. at 3). Instead, he has conditioned his execution of the releases on the City's agreement to a confidentiality stipulation, pursuant to which the City would withhold any information obtained from the sealed files

5

from the individual defendants until they have filed answers and this Court has ruled on his motion to disqualify the Storch firm. (See Mem. in Supp. of City Mot. at 3; Pl.'s Mem. in Opp'n to City Mot. at 2).

III.    Discussion

    A.    Disqualification

As the Second Circuit has noted, disqualification motions interfere with the ability of parties to choose their own counsel, often are employed for tactical reasons, and, even in the best of circumstances, cause delay. Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979); Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978). Accordingly, a party moving for disqualification carries a "heavy burden," Evans v. Artek Sys. Corp., 715 F.2d 788, 794 (2d Cir. 1983), and must satisfy a "high standard of proof." Gov't of India, 569 F.2d at 739. Although the conclusion in any particular case "can be reached only after painstaking analysis of the facts and precise application of precedent," United States v. Standard Oil Co., 136 F. Supp. 345, 367 (S.D.N.Y. 1955), the question ultimately is one of preserving the public's trust in the "scrupulous administration of justice and in the integrity of the bar." Hull v. Celanese Corp., 513 F.2d 568, 572 (2d Cir. 1975). For that reason, any lingering doubt must be resolved in favor of disqualification. Id. at 571.

In this case, Cabble seeks to disqualify the Storch firm on the basis of several disciplinary rules which address the ability of an attorney to serve as a witness in a proceeding in which he or she also proposes to function as a party's advocate. To the

extent that these rules deal with circumstances in which a party seeks to call its own

attorney as a witness, they clearly are inapplicable here since there has been no showing

that the individual defendants will seek to call anyone affiliated with the Storch firm as a

witness on their behalf.  See A.V. by Versace v. Versace, 160 F. Supp. 2d 657, 663-64

(S.D.N.Y. 2001).

Thus, the only colorable claim that Cabble can advance under the rules

relates to the ethical proscription against an attorney serving as counsel in a litigated

matter in which the attorney may be called as a witness by the other side and required to

give testimony adverse to the interests of the attorney's client.  In that regard,

Disciplinary Rule 5-102(b) of the New York Code of Professional Responsibility states as

follows:

> Neither a lawyer nor the lawyer's firm shall accept
> employment in contemplated or pending litigation if the
> lawyer knows or it is obvious that the lawyer or another
> lawyer in the lawyer's firm may be called as a witness on a
> significant issue other than on behalf of the client, and it is
> apparent that the testimony would or might be prejudicial to
> the client.

22 N.Y.C.R.R. § 1200.21.

Here, of course, the Storch firm has already accepted employment by the

individual defendants.  The Code of Professional Responsibility directly addresses this

circumstance, stating in subsection (c) of Disciplinary Rule 5-102:

> If, after undertaking employment in contemplated or pending
> litigation, a lawyer learns or it is obvious that the lawyer or a
> lawyer in his or her firm may be called as a witness on a

significant issue other than on behalf of the client, the lawyer
may continue the representation until it is apparent that the
testimony is or may be prejudicial to the client at which point
the lawyer and the firm must withdraw acting as an advocate
before the tribunal.

Id. This stand-still provision is consistent with case law holding that "'[d]isqualification

motions premised upon the advocate-witness rule are subjected to strict scrutiny because

of the 'strong potential for abuse' when a lawyer invokes the need to call opposing

counsel as a witness and then acts to disqualify him as counsel." Paramount

Communications, Inc. v. Donaghy, 858 F. Supp. 391, 394 (S.D.N.Y. 1994) (quoting

Russo v. Friedman, 91 Civ. 6913 (LBS), 1992 WL 196791, at *9 (S.D.N.Y. July 31,

1992)).

  To succeed on a motion to disqualify an attorney under Disciplinary Rule 5-

102(b), a movant must show that the adverse attorney's testimony is both necessary and

substantially likely to be prejudicial to the attorney's client. Versace, 160 F. Supp. 2d at

664; Donaghy, 858 F. Supp. at 394. In determining the necessity for an adverse

attorney's testimony, the Court must weigh a number of factors, including the

significance of the matters as to which the attorney's testimony is sought, the weight of

the testimony, and the availability of other evidence. Donaghy, 858 F. Supp. at 394.

"Testimony may be relevant and even highly useful but still not strictly necessary." Id.

Thus, if the attorney's testimony merely corroborates the testimony of others, it is not a

proper basis for disqualification. Sec. Ins. Co. of Hartford v. Mendon Leasing Corp., No.

01 Civ. 9054 (VM)(JCF), 2002 WL 31387484, at *3 (S.D.N.Y. Oct. 22, 2002).

Even where the proposed testimony has been shown to be "necessary," a party seeking to disqualify adverse counsel still must establish that the testimony will be prejudicial, i.e., "sufficiently adverse to the factual assertions or account of events offered on behalf of the client . . . that the client might have an interest in . . . discrediting that testimony." Donaghy, 858 F. Supp. at 395. "The movant bears the burden of demonstrating how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial." Id. (citing Parke-Hayden, Inc. v. Loews Theatre Mgmt., 794 F. Supp. 525, 527 (S.D.N.Y. 1992)).

Here, Cabble argues that the testimony of the Storch firm's attorneys is "demonstrably needed" because the individual defendants cannot "recall significant details concerning the events resulting in the malicious prosecution . . . and the Storch firm attorneys and employees are the best sources of this crucial evidence." (Pl.'s Mem. in Supp. at 14). However, Disciplinary Rule 5-102(b) and the case law thereunder require that the lawyer's testimony be "necessary, " not simply that it be the "best" evidence. See Donaghy, 858 F. Supp. at 394. Judged by that standard, courts deem a lawyer's testimony necessary *"only* if there [are] no other witnesses to the circumstances" at issue. Versace, 160 F. Supp. 2d at 664 (emphasis in original); see also Mendon Leasing, 2002 WL 31387484, at *3 (noting that "the availability of other witnesses . . . who could testify reduces the necessity for [the attorney's] testimony and weighs against disqualification."). In this case, Cabble has not even come close to the requisite showing.[3] Although Cabble

---

3       In his reply papers, Cabble seeks to gloss over this point by suggesting that the

(continued...)

has engaged in an extensive discussion of his alleged need, only a few examples are necessary to show that his motion lacks a factual basis.

Turning first to the civil rights, malicious prosecution, negligence and false arrest and imprisonment claims, Cabble understandably wishes to delve into the statements that the individual defendants made to the police and the Bronx District Attorney's Office. He contends that the individual defendants "have all testified that they cannot remember what was said" at their meetings with those law enforcement officials, and that Shah and Josie Hahn, a paralegal at the Storch firm, therefore are in a "unique position" to fill in the blanks. (See Pl.'s Mem. in Supp. at 16). Both of these assertions are patently wrong.

In his papers, Cabble alleges that "Rollieson and Dasent testified that they could not recall any details of their April 1, 2003, interview" at the police precinct. (Id. at 8). In fact, Rollieson stated only that she could not recall the details of what Dasent said; she did not say that she was unable to recall what she said during that interview. (See Wigdor Aff. Ex. 8 at 113-14). Moreover, even if Rollieson were unable to recall what she

---

(...continued)
individual defendants have the burden of proof as to this issue. (See Pl.'s Mem. in Further Supp. of Mot. to Disqualify at 12). However, it is not the individual defendants who bear the burden of showing that other witnesses are available; it is, instead, Cabble's burden to show that the attorneys' testimony is strictly necessary. See Versace, 160 F. Supp. 2d at 663.

herself said on that occasion, when Dasent was queried about that topic, she testified as follows:

> Q      What did Ms. Rollieson say?
>
> A      She was just explaining the different instances
>         that happened in the [S]tore with the girls.

(Id. Ex. 9 at 1122).  In fact, Cabble's counsel began his next question by remarking, "So you remember what Ms. Rollieson said."  (Id.).  In the absence of any showing that counsel pursued this line of inquiry unsuccessfully – and here there has been none – there is no basis for this Court to conclude that Dasent and Rollieson could not testify about their statements to the police.

Continuing in the same vein, Cabble alleges that defendants Soto, Collazo, Riddock, and Thorpe were unable to "remember much" about their meetings with the District Attorney's Office, including "the subjects discussed."  (Pl.'s Mem. in Supp. at 8).  While Soto was asked questions of clearly marginal relevance – such as "[H]ow long did you guys have to wait before you got in to see [the Assistant District Attorney]?"[4] – the deposition excerpt furnished to the Court by Cabble does not indicate that counsel ever asked her anything about the substance of what she said when she was questioned by the prosecutor.  (Wigdor Affirm. Ex. 10 at 407).  Similarly, although Collazo expressed some uncertainty as to how she got to the District Attorney's Office on the date of her interview, stating "I think I went with my mother that morning to work," there once again

---

4       Ironically, Soto recalled how long she had to wait before seeing the prosecutor.  (Wigdor Affirm. Ex. 10 at 407).

is no indication that she was asked about, much less failed to recall, the substance of her discussion with the prosecutor.  (Id. Ex. 11 at 710).

The bona fides of the assertion that Riddock lacked sufficient memory of her discussions with the prosecutor is perhaps best demonstrated by this excerpt from her deposition testimony, which apparently relates to a telephone call rather than a meeting:

> A[5]    I told her that he tried to kiss me and he groped my breasts. That's what I told her.  And I told her what he said to me and Lauren and I told her about the computer screens.  And what me and Lauren told Ms. Linda and how we felt about Ms. Linda and how we felt about him.  How he made everybody – all the females there feel uncomfortable while he was working.
>
> Q     Did you tell [the prosecutor] anything else?
>
> A     I don't remember.  I guess that's it.  I don't remember.

(Id. Ex. 12 at 567).  Although Riddock admittedly did say, "I don't remember," in her second answer, the questioning about her telephone conversation with the prosecutor then continued for several more pages, during which Riddock furnished further details.  (See id. at 567-68, 573-74).

Finally, Thorpe was asked such questions as, "Were you surprised when someone from the District Attorney's [O]ffice called you?"  (Id. Ex. 13 at 658).  Although she was unable to recall her state of mind at that time, there is no indication that she ever was asked to supply any details about the ensuing conversation.  (See id. at 657-59).

---

5       The transcript excerpt furnished by Cabble contains only the last word of the question to which this answer responds.  In context, however, it is clear that it related to a discussion with the prosecutor.

Even if this Court were to assume that the individual defendants are all but brain dead with respect to key subjects, as Cabble alleges, to establish the necessity of adverse counsel's testimony, Cabble would have to show that personnel from the Storch firm could fill in material gaps. In that regard, Cabble notes that Shah and Hahn "attended [d]efendants Rollieson['s] and Dasent's meetings with both the NYPD and at least one of [d]efendant Rollieson's meetings with the Bronx District Attorney's Office. (Pl.'s Mem. in Supp. at 16). On this basis, Cabble argues that "Ms. Shah['s] and/or Ms. Hahn's recollection about what was said in the meetings and/or interviews with law enforcement is critical evidence in this case." (<u>Id.</u>). Shah has submitted a declaration, however, which states that "[w]hile any interview with the police took place, Ms. Hahn and I were in a waiting area in the precinct" and that "neither Ms. Hall nor I were present at any interview or meeting that the Bronx [District Attorney's Office] had with Ms. Rollieson." (Shah Decl. ¶¶ 2-3). In light of this declaration, there is no basis to believe that personnel from the Storch firm are essential witnesses with respect to the arrest and prosecution-related aspects of Cabble's case.

The other branch of Cabble's lawsuit relates to his defamation claims. Since the press conference was videotaped, the attorneys at the Storch firm are not needed in order to determine what was said. Cabble nevertheless alleges that individuals from the Storch firm are necessary witnesses because there is an "absence of substantive testimony" as to what occurred when Rollieson met with Storch and Shah <u>before</u> the press

conference. (Pl.'s Mem. in Supp. at 17). This gap in the record is not surprising since Rollieson's counsel instructed her on attorney-client privilege grounds not to answer any questions about their meeting posed by Cabble's counsel. (<u>See</u> Wigdor Affirm. Ex. 8 at 284). In his motion papers, Cabble does not explain why this privilege would be any less applicable if Storch or Shah were the deponent, rather than Rollieson.

Cabble also alleges that Rollieson, Dasent and Dell'Aglio cannot recall what Rollieson and Dasent told the New York Times reporter. (Pl.'s Mem. in Supp. at 17). However, the only question that Rollieson was asked about her actual conversation with Kelley was whether she had to turn to her attorneys at any point to "ask whether it was appropriate" to answer a particular question. (Wigdor Affirm. Ex. 8 at 564). There is no indication that she was asked anything further about the substance of the New York Times interview, much less that she was unable to recall it. (<u>Id.</u> at 564-65). Similarly, the only thing that Dasent was asked and unable to recall about the interview was how long it took. (<u>Id.</u> Ex. 9 at 550). Obviously, opposing counsel need not be disqualified to fill in this gap.

Finally, when Dell'Aglio was asked about the Times interviewer, the questioning was as follows:

> Q    Were you in the room the entire time Ms.
>      Kelley was speaking with Ms. Rollieson and the
>      other people who were there?
>
> A    I believe so, yes.
>
> Q    What was discussed during that period?

A        Basically, Ms. Rollieson and Ms. Dasent told their stories. That was the majority of the time was taken up by that. Steven Storch spoke a little.

I don't remember exactly what he said and I spoke very little and I don't remember exactly what I said. <u>I'm sure looking at the article would refresh my memory</u>, but –

Q        I know it's hard to split up what people have said when. I'm going to ask you to think specifically about the day you were at the New York Times and tell me what Ms. Rollieson said that day.

A        I can't answer that. I just don't know. I heard the story. I had heard the story from her on the phone. I heard the story at the press conference about a week before. I don't recall hearing anything new or surprising.

(<u>Id.</u> Ex. 14 at 200-01) (emphasis added). Interestingly, there is no indication that Cabble's counsel ever showed Dell'Aglio the New York Times article to determine if it would refresh her recollection. In any event, even if the Court were to assume that Rollieson, Dasent and Dell'Aglio are unable to provide sufficient details about the Kelley interview, they were not the only non-attorneys who were present in the interview room. The reporter also was there and Cabble has not shown, at least at this stage, that the reporter is unwilling or unable to testify.

Finally, Cabble alleges that "Shah is the only available witness who can testify about what [d]efendant Rollieson said about [Cabble's] alleged criminal activity during seminars organized by Citizen[] Action New York in light of Ms. Dell'Aglio's inability to recall [d]efendant Rollieson's statements." (Pl.'s Mem. in Supp. at 17). The

excerpt from Dell'Aglio's deposition annexed to Cabble's motion papers does not, in fact, establish that she would have been unable to recall the statements that Rollieson made at the seminars had there been some minimal prompting by the questioner. (<u>See</u> Wigdor Affirm. Ex. 14 at 106-10). More importantly, as Cabble's own papers show, there were numerous attendees at each seminar. Cabble has not shown that he has made any effort to identify the other participants in the seminars, that this information could not be obtained through discovery, or that the other participants do not recall what Rollieson said. Additionally, even if Dell'Aglio were of no assistance and the other persons participating in the seminars could not be located, Cabble carefully avoids mention of the fact that Rollieson was at the seminars. There has been absolutely no showing that Rollieson is unable to testify about what she said. In the absence of any showing that Rollieson is unable to fill the alleged evidentiary gaps, Cabble clearly cannot make the requisite showing of necessity as to the discussion at the seminars.

In view of Cabble's clear failure to establish that the testimony of persons at the Storch firm is necessary to prove his claims, there is no need to consider whether the failure to disqualify the Storch firm would prejudice Cabble's case. Instead, based simply on the inadequacy of his showing of necessity, Cabble's motion to disqualify the Storch firm is denied.

B.    Motion to Compel

Section 160.50(1) of the CPL provides that:

> 1. Upon the termination of a criminal action or proceeding
> against a person in favor of such person, . . . the record of
> such action or proceeding shall be sealed . . . .  Upon receipt
> of notification of such termination and sealing:
>
> . . . .
>
> (c)  all official records and papers, including judgments and
> orders of a court but not including published court decisions
> or opinions or records and briefs on appeal, relating to the
> arrest or prosecution . . . on file with the division of criminal
> justice services, any court, police agency, or prosecutor's
> office shall be sealed and not made available to any person or
> public or private agency;
>
> (d)  such records shall be made available to the person
> accused or to such person's designated agent . . . .

CPL §§ 160.50(1)(c), (d) (McKinney's 2004).  The purpose of the sealing provision of

this statute is to "insur[e] that one who is charged but not convicted of an offense suffers

no stigma as a result of his having once been the object of an unsustained accusation."

Fountain v. City of N.Y., No. 03 Civ. 4526 (RWS), 2004 WL 1474695, at *2 (S.D.N.Y.

June 30, 2004) (quoting Matter of Hynes v. Karassik, 47 N.Y.2d 659, 662 (1979)).

Nevertheless, the sealing is not always permanent as a "party otherwise protected by a

[Section] 160.50 sealing of records can waive that protection by commencing a civil

action and placing protected information into issue."  Green v. Montgomery, 219 F.3d 52,

57 (2d Cir. 2000) (citing Kalogris v. Roberts, 586 N.Y.S.2d 806, 807 (1st Dep't 1992)).

Even in that instance, however, the unsealing of records does not entitle either the former

accused or those he is suing to unlimited access to the sealed records. For example, records compiled for law enforcement purposes may not be subject to disclosure "where disclosure would interfere with law enforcement investigations or judicial proceedings." See Harper v. Angiolillo, 89 N.Y.2d 761, 767 (1997).

Cabble does not seem to dispute the City's entitlement to secure the records of his prosecution so that it can fulfill its obligations under Rule 11 of the Federal Rules of Civil Procedure in connection with its preparation of an answer and later defense of this suit. The issue, instead, is one of timing. Cabble contends first that the materials should not be disclosed to the Storch firm – which continues to represent the individual defendants as plaintiffs in the state court action – because that firm should be disqualified. (Pl.'s Mem. in Opp'n to City Mot. at 2). This argument obviously is moot in light of the Court's denial of Cabble's motion to disqualify the Storch firm.

Cabble's second contention is that the defendants are not entitled to those materials until issue has been joined and formal discovery is underway. (Id.). For the City's request for the sealed documents to constitute premature discovery, it presumably would have to fall within one of the methods of discovery delineated in Rule 26 of the Federal Rules of Civil Procedure. Inasmuch as the request does not entail the use of depositions, interrogatories, or medical examinations, the issue necessarily is whether the Section 160.50 Releases constitute a demand for the production of documents under Rules 34 or 45 of the Federal Rules of Civil Procedure. Although the cases cited by the City show that judges in this District have routinely granted requests to compel the

execution of Section 160.50 Releases, (see Bruzzese Dec. Exs. G, H), whether such a request constitutes discovery appears to be a question of first impression.

Rule 45, which deals with the production of documents by a nonparty pursuant to subpoena, plainly is inapplicable here because the City is not seeking to subpoena anything. See generally 9 Moore's Federal Practice § 45.02 (3d ed. 2000) ("Moore's"). Rule 34, which seems closer to the facts of this case, allows a party to an action to "serve on any other party a request 'to produce and permit the party making the request . . . to inspect and copy any designated documents'" which are in the possession, custody or control of the party on whom the request is served. See Tangorre v. Mako's, Inc., No. 01 Civ. 4430 (BSJ), 2002 WL 206988, at *3 (S.D.N.Y. Feb. 8, 2002). Thus, if the documents are not in the "possession, custody or control" of a party to the action, Rule 34 does not govern. Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pa., No. 90 Civ. 7811 (AGS), 1994 WL 510043, at *3 (S.D.N.Y. Sep. 16, 1994); see also M.L.C., Inc. v. North Amer. Philips Corp., 109 F.R.D 134, 136 (S.D.N.Y. 1986) ("A party may be ordered to produce documents where that party has the legal right to obtain the documents, even though that party retains no copy, and regardless of whether the documents are beyond the jurisdiction of the court.").

Here, Cabble has a form of limited control over the sealed documents since he can, by executing the releases, cause the files to be made accessible to the City and individual defendants. For this reason, the documents sought would appear to be the proper subject of a demand for their production under Rule 34. However, one important

19

factor that distinguishes the defendants' request from other Rule 34 requests is that the files in question are actually the City's own files, which have been sealed pursuant to Section 160.50. Thus, the City is not seeking discovery from its adversary; it is, instead, seeking access to its own files so that it can respond intelligently to the Complaint. Were it not for Section 160.50, the protection of which Cabble has expressly waived, the files sought would be in the City's possession, custody and control, and the defendants would not need a signed release from Cabble.

In these unique circumstances, I hold that the demand for the execution of Section 160.50 Releases is not discovery, and that the City is entitled to review its own sealed records so that it may conduct the investigation required by Rule 11 prior to answering the Complaint. The motion to compel is therefore granted, and Cabble is directed to execute the Section 160.50 releases and return them to the Law Department within five business days. Additionally, because the Storch firm is not being disqualified, the filing of this suit constitutes a waiver of confidentiality, and the files related to Cabble's arrest and prosecution do not constitute discovery, the City may make copies of the documents obtained pursuant to the Section 160.50 Releases available to the individual defendants.

C.      Motion to Strike

The individual defendants' motion to strike seeks to redact a portion of the Complaint which reads as follows:

> Upon information and belief, the actions of Defendant Dasent in filing the false and malicious complaints against Mr. Cabble were undertaken shortly after her retention of and with support of her civil attorneys Steven Storch, Sangita Shah and Lita Beth Wright, all of whom are members of or associated with the law firm of Storch Amini & Munves ("the Storch Firm"). . . . Upon information and belief, the Storch firm encouraged Defendant Dasent to file criminal charges in order to bolster the civil case against Hollywood Video.

(Compl. ¶ 18).

The individual defendants argue that the allegation that the Storch firm encouraged Dasent to file criminal charges in order to bolster the state court civil case is irrelevant to Cabble's claims. (Ind. Defs.' Mem. in Opp'n to Mot. to Disqualify at 15). In their view, because the Storch firm has not been named as a defendant, whether the charges against Cabble were instigated by the Storch firm and whether the Storch firm knew that the charges were false is not relevant. (Id. at 15-16).

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may, upon motion or its own initiative, "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Although district courts have considerable discretion in deciding whether to grant such motions, Allocco v. Dow Jones Co., No. 02 Civ. 1029 (LMM), 2002 WL 1484400, at *1 (S.D.N.Y. July 10, 2002), the Second Circuit has cautioned that a motion to strike should not be granted unless there is a "strong reason for doing so." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976) (citing Nagler v. Admiral Corp., 248 F.2d 319, 325 (2d Cir. 1957)).

Matter that is immaterial or impertinent within the meaning of Rule 12(f) is that which is "neither responsive nor relevant to the issues involved in the action." 2 Moore's § 12.37[3]. To meet this standard, the movant must show that "no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." Allocco, 2002 WL 1484400, at *1 (quoting Metrokane, Inc. v. The Wine Enthusiast, 160 F. Supp. 2d 633, 641-42 (S.D.N.Y. 2001)); see also Mikropul Corp. v. DeSimone & Chaplin-Airtech, Inc., 599 F. Supp. 940, 945 (S.D.N.Y. 1984) ("A motion to strike immaterial or impertinent matter from a pleading will ordinarily not be granted unless the matter sought to be stricken clearly can have no possible relation to the matter in controversy.") (internal quotation marks deleted). Since this requires a detailed inquiry into the facts, generally "only as a trial unfolds can a determination of relevance be properly made." Mikropul Corp., 599 F. Supp. at 945.

Motions to strike are disfavored and are generally granted only when the challenged matter is scandalous. Metrokane, 160 F. Supp. 2d at 641-42. A scandalous allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court. Khalid Bin Talal v. E.F. Hutton & Co., Inc., 720 F. Supp. 671, 686 (N.D. Ill. 1989). Even where matter in a pleading is relevant to the controversy, it nonetheless may be stricken if it is scandalous or set out in "needless detail." Gleason v. Chain Service Restaurant, 300 F. Supp. 1241, 1257 (S.D.N.Y. 1969).

In this case, the individual defendants have failed to show that the allegation regarding the Storch firm has no possible relation to the issues or is scandalous. For example, the complaint charges them with malicious prosecution. The elements of that tort under New York law are "(1) the initiation or continuation of a criminal proceeding against [a plaintiff], (2) termination of the proceeding in [the] plaintiff's favor, (3) lack of probable cause for commencing the proceeding, and (4) actual malice as a motivation for defendant's actions." Jackson v. City of New York, No. 00 Civ. 1206 (GBD), 2004 WL 895609, at *4 (S.D.N.Y. April 26, 2004). The malice element requires a showing of a "wrong or improper motive, something other than a desire to see the ends of justice served." Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005) (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996)).

At this preliminary stage, the Court cannot say that the allegations in question have no possible relation to Dasent's motivation in filing the allegedly false criminal charges against Cabble. Thus, they cannot be stricken on the theory that they are irrelevant. Furthermore, while the allegations certainly are not flattering to the Storch firm or defendant Dasent, they do not rise to the level of "scandalous" material.

The individual defendants' motion to strike is therefore denied.

V.    Conclusion

For these reasons, Cabble's motion to disqualify the Storch firm (Docket

No. 12) and the individual defendants' cross-motion to strike (Docket No. 24) are denied.

The City's motion to compel Cabble to execute Section 160.50 Releases (Docket No. 21)

is granted, and he is directed to return them to the City within five business days.

Thereafter, the defendants shall have sixty days to answer or move with respect to the

Complaint.

SO ORDERED.

Dated:     New York, New York
           February 24, 2006

FRANK MAAS
United States Magistrate Judge