UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CHARLES CABBLE,

       Plaintiff,

  -v-                                          No. 04 Civ. 9413 (LTS) (FM)

CITY OF NEW YORK,

       Defendant.

-------------------------------------------------------x

## Memorandum Opinion and Order

Plaintiff Charles Cabble ("Plaintiff") brings claims against Defendant City of New York ("Defendant") under 42 U.S.C. § 1983, alleging that he was subjected to false arrest, malicious prosecution and malicious abuse of process in violation of his rights under the Fourth and Fifth Amendments to the U.S. Constitution. Plaintiff also brings state law tort claims for false arrest, malicious prosecution, malicious abuse of process, negligence and intentional infliction of emotional distress. This court has jurisdiction of Plaintiff's claims under 28 U.S.C. §§ 1331, 1343 and 1367.

Defendant moves to dismiss this action pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. The motion is granted in part and denied in part.

### Background

The following are facts drawn from Plaintiff's Second Amended Complaint ("SAC") and are taken as true for the purposes of this motion practice. In March 2003, Plaintiff

was the manager of a Hollywood Video store in the Bronx, where Nyree Soto ("Soto") and Tamesha Dasent ("Dasent") were both employees.  (SAC ¶ 12.)  Dasent used a false name, "Norda Williams," throughout all the events described below.  (Id. ¶¶ 85-86.)

On March 15, 2003, Soto complained to Sgt. Adam Sanchez of the 45th Precinct that Plaintiff had raped her two weeks earlier.  (Id. ¶¶ 38-39.)  Soto made her rape complaint while Sgt. Sanchez was investigating Plaintiff's allegation that Soto's boyfriend had assaulted him.  (Id. ¶¶ 32-33.)  Sgt. Sanchez, who had no training in rape investigations, asked both Plaintiff and Soto to return to the 45th Precinct with him so that detectives of the Special Victims Squad could interview them.  (Id. ¶¶ 45, 52.)  At the precinct, Soto joked and laughed with a friend.  (Id. ¶¶ 50-51.)  No Special Victims Squad detectives were available to assist Sgt. Sanchez, so Sgt. Sanchez arrested Plaintiff without further investigation.  (Id. ¶¶ 53, 57, 59.)

On April 1, 2003, Dasent lodged a police complaint alleging that Plaintiff had sexually assaulted her in the back office of Hollywood Video on December 25, 2002.  (Id. ¶¶ 70, 72.)  Present with Dasent when she made her complaint were Soto and two civil attorneys who would later, on April 17, 2003, file a $50 million sexual harassment civil lawsuit against Hollywood Video on behalf of Soto and Dasent.  (Id. ¶¶ 72, 101.)  She thereafter alleged that Mr. Cabble had also assaulted her sexually on August 26, 2002.  (Id. ¶ 95.)

Plaintiff was arrested again on April 1, 2003, was arraigned, and was remanded to Riker's Island until he was released on his own recognizance on November 10, 2003.  (Id. ¶ 16.)  On April 25, 2003, Plaintiff was indicted by a grand jury on multiple counts of rape and attempted rape as well as related charges.  (Id. ¶¶ 123, 136.)  Prosecutors did not present to the grand jury any evidence of Soto and Dasent's civil suit against Hollywood Video or any evidence

of hundreds of personal phone calls between Plaintiff and Soto occurring both before and after the alleged rape. (Id. ¶¶ 114-118.) Prosecutors also failed timely to subpoena a security video recording of the back office of Hollywood Video dated December 25, 2002, which contradicted certain aspects of Dasent's description of the alleged sexual assault incident on that date. (Id. ¶¶ 73, 78, 120-122.)

At a bench trial that commenced before Justice Steven Barrett in Bronx County Supreme Court on March 1, 2004, 10 of the 25 counts of the indictment were dismissed or withdrawn by the Bronx District Attorney's Office, and Plaintiff was acquitted on the remainder. (Id. ¶¶ 145-47.)

DISCUSSION

In deciding a motion to dismiss a complaint, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

*False Arrest*

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)) (internal quotation marks omitted). To state a claim for false arrest, Plaintiff must allege that: 1) the defendant intended to confine him,

2) the plaintiff was conscious of the confinement, 3) the plaintiff did not consent to the confinement and 4) the confinement was not otherwise privileged. Broughton v. State, 37 N.Y.2d 451, 456 (1975). The parties dispute only whether Plaintiff has plausibly stated that his arrest was not privileged, i.e., that it was not supported by probable cause.

"Probable cause exists when, based on the totality of circumstances, the officer has . . . reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Finigan v. Marshall, 574 F.3d 57, 62 (2d Cir. 2009). In this case, at the time of each arrest of Plaintiff, the only information available to the arresting officer was the statement of the putative victim – there were, according to the complaint, no witnesses to the alleged criminal acts, nor any physical evidence.

"An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). Although both arrests were based on victims' complaints, Plaintiff has plausibly alleged that there were circumstances raising doubts about Soto's and Dasent's veracity at the time of Plaintiff's arrests. Plaintiff alleges that both Soto and Dasent made their complaints weeks or months after the alleged crimes took place, that they both filed a multi-million dollar civil suit against Hollywood Video within weeks of their criminal complaints, that Soto made her complaint during a police investigation into the alleged criminal conduct of her own boyfriend and that Soto was laughing and joking at the 45th Precinct during the investigation of her rape complaint. Taken together,

these facts constitute a plausible claim of circumstances raising doubt about Soto's and Dasent's veracity concerning their claims of rape and attempted rape.  Therefore, Plaintiff has plausibly alleged that his arrests were made without probable cause.

*Malicious Prosecution*

The elements of a claim for malicious prosecution pursuant to 42 U.S.C. § 1983 are, in all respects here relevant, the same as those of the corresponding state tort cause of action. "Under New York law, a plaintiff suing for malicious prosecution must establish: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  See Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995).  Plaintiff alleges that he was prosecuted without probable cause.  However, Plaintiff's indictment by the grand jury creates a presumption that his prosecution was based on probable cause.  Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).  While this presumption of probable cause may be rebutted by evidence of "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith," Colon v. City of New York, 60 N.Y.2d 78, 82 (1983), Plaintiff does not allege any such bad faith conduct by the police.  Rather, Plaintiff contends that the presumption of probable cause is vitiated by the prosecutors' failure to present exculpatory evidence to the grand jury.

Plaintiff asserts that prosecutors did not inform the grand jury of the civil suit filed by Soto and Dasent, or of the hundreds of phone calls between Soto and Plaintiff.  Additionally, Plaintiff asserts that prosecutors failed to obtain and present to the grand jury the video tape which, according to Plaintiff, disproved Dasent's account of the December 2002 incident, and

failed to discover that Dasent was using a false name.  Generally, under New York law, a prosecutor is not obligated to present all exculpatory evidence to the grand jury.  Savino, 331 F.3d at 75 (citing People v. Mitchell, 82 N.Y.2d 509, 515 (1993)).  Nonetheless, a prosecutor "has a duty to present . . . 'exculpatory evidence to the Grand Jury where such evidence is substantial and where it might reasonably be expected to lead the jury not to indict.'"  Celestin v. City of New York, 581 F. Supp. 2d 420, 433 (E.D.N.Y. 2008) (quoting United States v. Casamento, 887 F.2d 1141, 1183 (2d Cir. 1989)).

Here, the grand jury's decision to indict depended largely on the credibility of the complaining witnesses because, as with the decision to arrest, there were no other witnesses to the alleged crimes nor was there physical evidence.  All of the exculpatory evidence that Plaintiff contends was withheld from the grand jury relates to the credibility of the complaining witnesses – had this information caused the jurors to discredit the witnesses' testimony it is reasonable to believe that the grand jury would not have indicted Plaintiff.  Therefore, Plaintiff has plausibly claimed that the failure to present this evidence to the grand jury overcomes the presumption of probable cause normally created by the indictment.  Additionally, initiating and continuing a prosecution without probable cause can give rise to an inference of malice.  See Morrissey v. Nat'l Maritime Union, 544 F.2d 19, 29 (2d Cir. 1976).  Therefore, Plaintiff  has plausibly stated a claim for malicious prosecution.

*Malicious Abuse of Process*

The Second Circuit looks to the New York state law tort of abuse of process for the elements of this Section 1983 claim where, as here, the underlying conduct occurred in New York.  Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).  An abuse of process claim lies against a

defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.  Curiano v. Suozzi, 63 N.Y.2d 113, 116 (N.Y. 1984).  Here, Plaintiff alleges that prosecutors pursued the prosecution against him in order to obtain the collateral objective of "avoid[ing] negative press coverage, which may have resulted from voluntary dismissal of charges against Mr. Cabble and/or speedier release from detention."  (SAC ¶ 152.)  Apart from this one conclusory and speculative statement, Plaintiff provides no factual allegations which would "nudge" this claim from "conceivable to plausible."  Twombly, 550 U.S. at 570.  Plaintiff fails to state a claim for malicious abuse of process.

*Municipal Liability*

The City of New York is the sole remaining defendant in this case.  Under 28 U.S.C. § 1983, a municipality cannot be liable for the acts of its employees merely on a theory of *respondeat superior*.  Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978).  A local government may be sued under § 1983 when "execution of [the] government's policy or custom . . . inflicts the injury."  Id. at 694.  "[To] hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (citing Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)).

Plaintiff argues that the City can properly be held liable on his claims because the City's failure to train its employees resulted in his false arrest, malicious prosecution and

malicious abuse of process. A city's failure to train its employees constitutes an official policy or custom if the failure amounts to "deliberate indifference" to the rights of those with whom the city employees interact. City of Canton v. Harris, 489 U.S. 378, 388 (1989). To establish deliberate indifference, a plaintiff must show: 1) that a policymaker knows "to a moral certainty" that city employees will confront a particular situation; 2) that the situation presents the employee with "a difficult choice of the sort that training or supervision will make less difficult;" and 3) that "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992). Additionally, a plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." Cuevas v. City of New York, 07 Civ. 4169 (LAP), 2009 WL 4773033, at *3 (S.D.N.Y. Dec. 7, 2009) (quoting Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004)) (internal quotation marks omitted).

Plaintiff alleges that city policymakers failed to train prosecutors and police officers in avoiding malicious prosecution, handling exculpatory material and conducting adequate pre-arrest and pre-indictment investigations into allegations of sexual assault. (SAC ¶¶ 23-24.) Plaintiff sets forth sufficient facts to make these claims plausible with regard to false arrest: Plaintiff asserts that Sgt. Sanchez had received no training on rape investigations, had made few rape arrests in his career, and had relied on the expertise of the Special Victims Unit to handle the investigation but that, ultimately, the Special Victims Unit failed to assist the investigation. By pointing to this specific flaw in the NYPD's training of the officer involved, Plaintiff has plausibly stated a claim against the city for failure to train police officers to conduct

adequate pre-arrest investigations into rape and sexual assault allegations, resulting in his false arrest.

However, Plaintiff fails to make any further factual allegations to support his claim that the prosecutors' failure to introduce exculpatory evidence to the grand jury was due to a failure to train. Because Plaintiff has failed to "identify a specific deficiency in the city's training program" that is "closely related to [his] ultimate injury," he has failed plausibly to state a § 1983 claim against the city for failure to train prosecutors. Cuevas, 2009 WL 4773033, at *3.

*State Law Claims*

As explained above, Plaintiff has plausibly stated a claim for the torts of false arrest and malicious prosecution, but has failed to state a claim for malicious abuse of process under New York State law.

Defendant argues that Plaintiff's negligence claim should be dismissed because he may not plead theories of intentional tort and negligence based on the same set of facts. However, rule 8(d)(3) of the Federal Rules of Civil Procedure provides that "a party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Plaintiff has plausibly stated his negligence claim.

Plaintiff has also successfully stated a claim for intentional infliction of emotional distress in that he has plausibly alleged that the city's failure to train its officers to conduct adequate investigations into allegations of rape prior to arrest constitutes extreme and outrageous conduct.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Second Amended Complaint is granted as to Plaintiff's federal and state malicious abuse of process claims, and as to Plaintiff's federal malicious prosecution claim insofar as it seeks to hold the Defendant City liable for alleged violations of his rights by prosecutors. The motion is denied in all other respects. This Memorandum Opinion and Order resolves docket entry number 94.

This case remains referred to Magistrate Judge Maas for general pretrial management. The parties are directed to meet promptly with Judge Maas to address settlement and any outstanding pretrial matters.

SO ORDERED.

Dated: New York, New York
March 29, 2010

_____
LAURA TAYLOR SWAIN
United States District Judge